UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DEANGELO GAINES, | ) |
|                 Plaintiff, | ) |
|               v. | ) No. 2:16-cv-00139-JRS-DLP |
| CORIZON HEALTH, LOLIT JOSEPH, BRYAN BULLER, ALEXANDREA WARREN, MIKE NATALIE, FARRAH BUNCH, KAYLA MCDERMIT, GRAHAM MOORE, DEBORAH WHITE, KATHY EDRINGTON, JESSICA HIRT, NICHOLAS OSBORNE, MICHAEL ALUKER Dr., TAMMY OWEN, BARRY CLEVELAND, KARI PIERCE, CASSANDRA FELIX, INDIANA DEPARTMENT OF CORRECTION, PEGGY MCWHIRTER, | ) |
|               Defendants. | ) |

**Entry Granting Defendant Aluker's Unopposed Motion for Summary Judgment**

For the reasons explained in this Entry, the motion for summary judgment filed by Dr. Michael Aluker, [dkt. 235], is **granted.** The pending motion for summary judgment filed by the other defendants in this action will be discussed in a separate Entry to be issued as soon as possible in light of the Court's pressing caseload.

# I. Background

Plaintiff Deangelo Gaines filed this civil rights action on April 25, 2016. At the time of filing, he was incarcerated at the Putnamville Correctional Facility ("Putnamville"). He filed an amended complaint on July 18, 2016. Dkt. 11. The Court screened the amended complaint and allowed claims to proceed against numerous defendants, one of whom was Dr. Aluker. Mr. Gaines seeks compensatory, punitive, and nominal damages.

More specifically, Mr. Gaines alleges that he has a seizure disorder but that from January 14, 2013, when he arrived at Putnamville, until October of 2015, he was denied a helmet. He alleges that his requests for a seizure helmet were denied from April 2014 until June 2015 by, among others, Dr. Aluker. Mr. Gaines was provided a seizure helmet in October of 2015. Dr. Aluker is alleged to have been deliberately indifferent to Mr. Gaines' serious medical needs.

Dr. Aluker seeks resolution of Mr. Gaines' claim against him through the entry of summary judgment. Mr. Gaines has not opposed the motion for summary judgment.

# II. Summary Judgment Standards

The purpose of summary judgment is to "pierce the pleadings and to assess the proof to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in

that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

Dr. Aluker's motion for summary judgment, brief in support, and Local Rule 56-1 notice were served on Mr. Gaines on or about March 22, 2018. Dkt. nos. 235, 236, 237, 238. As noted, even though Mr. Gaines requested one extension of time, no response has been filed, and the deadline for doing so has long passed.

The consequence of Mr. Gaines' failure to respond is that he has conceded the defendant's version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

### III. Discussion

#### A. Undisputed Facts

The following facts, unopposed by Mr. Gaines and supported by admissible evidence, are accepted as true:

At all times relevant to the amended complaint, Mr. Gaines was an inmate at Putnamville. Mr. Gaines was released from prison on or about December 6, 2017.

During all times relevant to the amended complaint, Dr. Aluker was a physician licensed to practice medicine in the State of Indiana. Dr. Aluker provided medical care to Mr. Gaines on seven (7) occasions from January 15, 2015, to June 24, 2015.

On January 15, 2015, Dr. Aluker evaluated Mr. Gaines for the first time for a scheduled chronic care visit. At the time of his first examination, Mr. Gaines' medical history included epilepsy, seizure disorder, elevated lipids, psoriasis, and chronic low back pain. Other documented chronic problems included alcohol dependence syndrome and schizoaffective disorder. Dr. Aluker obtained a thorough history from Mr. Gaines regarding his epileptic condition, and Mr. Gaines reported that his most recent seizure was "several months ago." Dkt. 236-2 at 1. During his first encounter with Dr. Aluker, Mr. Gaines was taking the prescription anticonvulsant medication Lamictal. Mr. Gaines reported compliance with his anticonvulsant medication and reported that it worked well for managing his seizures.

Dr. Aluker performed a physical examination which demonstrated no abnormalities. He made no changes to Mr. Gaines' prescribed medications at that time and ordered that a separate visit be scheduled to address Mr. Gaines' complaints of chronic back pain. He further ordered a chronic care clinic follow-up appointment for Mr. Gaines' neurological condition in three (3) months.

Mr. Gaines presented to Dr. Aluker on February 4, 2015, for a scheduled visit for further evaluation of his chronic low back pain. Mr. Gaines reported that he was involved in a motor vehicle accident in 1997 which caused head, neck, and low back trauma. He reported that he began having seizures after the accident and that he had undergone surgery on his low back as a result of his injuries. Dr. Aluker documented that Mr. Gaines continued to experience headaches, seizures, neck and back pain, and that Mr. Gaines' pain was previously controlled by the prescription medication Neurontin.

Dr. Aluker performed a physical examination. He identified muscle spasm and tenderness to palpation in Mr. Gaines' lower back and neck. Dr. Aluker's assessment was chronic post-traumatic low back pain. He ordered Neurontin 300 mg be re-started, and Mr. Gaines was instructed to follow up as needed.

Mr. Gaines returned to Dr. Aluker on February 26, 2015, for a scheduled follow up visit for his complaint of back pain. Mr. Gaines reported pain to the lower back and neck without radiation to the lower extremities, however, he was unable to quantify the pain. Dr. Aluker documented Mr. Gaines' reports of increased pain with lying flat, changing position from sitting to standing, and with going up or down stairs. Mr. Gaines reported compliance with previously prescribed exercises. Dr. Aluker diagnosed Mr. Gaines with lumbago. He increased Mr. Gaines' Neurontin dosage to 300 mg twice daily and ordered physical therapy. He instructed Mr. Gaines to return after completing physical therapy to assess his medication needs.

On March 30, 2015, Mr. Gaines presented to Dr. Aluker for a scheduled visit to discuss pain management. Mr. Gaines reported continued pain with a "flare up" of his pain for the past two (2) days. Dkt. 236-2 at 10. Dr. Aluker's assessment was that Mr. Gaines was experiencing an

acute exacerbation of his chronic back pain. Dr. Aluker increased Mr. Gaines' Neurontin dosage to 600 mg twice daily and ordered a steroid taper.

Dr. Aluker evaluated Mr. Gaines for a scheduled visit on May 5, 2015, for follow up regarding his complaints of back pain. Mr. Gaines reported that his pain was about the same overall, but was worse between his morning and evening doses of Neurontin. Dr. Aluker's assessment was low back pain, caused by the motor vehicle accident. Dr. Aluker ordered that Mr. Gaines' Neurontin dosage remain the same, but that the frequency be increased to three times daily.

Dr. Aluker examined Mr. Gaines on May 12, 2015, following a seizure earlier in the day. Mr. Gaines reported that his seizures occurred less than once per month since the motor vehicle accident. He reported that his seizures were usually triggered by an impact, and he reported that he had a fall that day. Dr. Aluker also noted Mr. Gaines' history of back pain, which had previously been stable. After his seizure, however, Mr. Gaines reported an increase in muscle spasms.

Dr. Aluker conducted a physical examination of Mr. Gaines and documented significant muscle spasm locally in the lower back. Dr. Aluker's assessment was recent exacerbation of chronic low back pain after a seizure. He documented that Mr. Gaines did not tolerate muscle relaxers, and therefore he ordered a continuation of Mr. Gaines' increased Neurontin dosage of 600 mg three times daily.

Dr. Aluker's final involvement in Mr. Gaines' care occurred on June 24, 2015, when Mr. Gaines reported limitations in his functional activity due to his history of seizures, which he now reported were triggered by anxiety and hyperactivity, and his chronic low back pain. Dr. Aluker ordered that Mr. Gaines be placed on a restricted activity level with no lifting over 25 pounds, no twisting motion, and no pushing or pulling more than 40 pounds.

Thereafter, Dr. Aluker had no further involvement in Mr. Gaines' medical care.

In sum, Dr. Aluker did not witness Mr. Gaines experience a seizure at any time. Mr. Gaines did not make any request for a seizure helmet to Dr. Aluker at any time during his treatment. During every interaction between Dr. Aluker and Mr. Gaines, Mr. Gaines' primary complaint was low back and neck pain. Mr. Gaines had reported that he was compliant with his anticonvulsant medications and that his seizures were well-controlled with medication. Mr. Gaines was prescribed the anticonvulsant medication Lamictal by another healthcare provider prior to Dr. Aluker's involvement in his medical care, and Dr. Aluker made no changes to Mr. Gaines' anticonvulsant medication at any time.

### B. Analysis

At all times relevant to Mr. Gaines' claims against Dr. Aluker, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 8374 (1994); *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011). "A medical

condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014).

Dr. Aluker does not dispute that Mr. Gaines' seizure disorder was an objectively serious medical need. Dr. Aluker contends that Mr. Gaines' complaints about chronic back and neck pain were not objectively serious medical needs, but that is not an issue the Court needs to resolve. Dr. Aluker does argue that he was not deliberately indifferent to Mr. Gaines' seizure disorder.

The subjective element of a deliberate indifference claim "requires more than negligence and it approaches intentional wrongdoing. The Supreme Court has compared the deliberate indifference standard to that of criminal recklessness." *Burton v. Downey,* 805 F.3d 776, 784 (7th Cir. 2015) (internal citation and quotation omitted). To constitute deliberate indifference, "a medical professional's treatment decision must be such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Petties,* 836 F.3d at 729 (internal quotation omitted).

Here, the undisputed evidence shows that during the seven (7) appointments with Dr. Aluker between January 15, 2015, and June 24, 2015, Mr. Gaines never requested a seizure helmet. Dr. Aluker never made any changes to Mr. Gaines' anticonvulsant medication, Lamictal, because it was working well. Mr. Gaines also reported that he was compliant with taking his medication. When Mr. Gaines first saw Dr. Aluker in January 2015, his most recent seizure had been several months before then. The only seizure Mr. Gaines reported to Dr. Aluker occurred on May 12, 2015.

An inmate "is entitled to reasonable measures to meet a substantial risk of serious harm." *Arnett,* 658 F.3d at 754. Here, Mr. Gaines did not request any treatment that Dr. Aluker did not provide. Dr. Aluker examined Mr. Gaines at each appointment and ordered changes in medications

and physical therapy, and restricted Mr. Gaines' activity level in response to Mr. Gaines' complaints of pain. No reasonable jury could find based on this record that Dr. Aluker was deliberately indifferent to Mr. Gaines' seizure disorder or any other medical condition.

## IV. Conclusion

In sum, Mr. Gaines has failed to present any evidence that would create a genuine issue of material fact as to his claim of deliberate indifference against Dr. Aluker in this action.

Dr. Aluker's motion requesting a ruling on his motion for summary judgment, dkt. [242], is **granted.**

For the reasons explained above, the unopposed motion for summary judgment filed by Dr. Aluker, dkt. [235], is **granted.** No partial final judgment shall issue at this time.

**IT IS SO ORDERED.**

Date: 11/2/2018

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DEANGELO GAINES
4902 Norwaldo Avenue
Indianapolis, IN 46205

James F. Bleeke
BLEEKE DILLON CRANDALL ATTORNEYS
jim@bleekedilloncrandall.com

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Benjamin Myron Lane Jones
INDIANA ATTORNEY GENERAL
benjamin.jones@atg.in.gov

Ashlie K. Keaton
BLEEKE DILLON CRANDALL ATTORNEYS
ashlie@bleekedilloncrandall.com

Britney Jade McMahan
BLEEKE DILLON CRANDALL, PC
britney@bleekedilloncrandall.com

Nathan Aaron Pagryzinski
BLEEKE DILLON CRANDALL, P.C.
nathan@bleekedilloncrandall.com

Andrew Scheil
INDIANA ATTORNEY GENERAL
Andrew.Scheil@atg.in.gov